Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanos Keele,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Rite of Passage, Inc.,<br><br>　　　　　　　Defendant. | No. 2:14-cv-02135-DLR<br><br>**PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT** |

COMES NOW the Plaintiff and hereby responds to Defendant's Motion for Summary Judgment with the accompanying Memorandum of Points and Authorities and Controverting and Additional Statements of Fact ("CSOF" and "ASOF"), and requests the Court to deny the Motion (in part) for the reasons stated herein and allow this case to proceed to trial.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction.

Defendant's Motion is too clever by half. By creative use of the word "supervise" (as in, Mr. Keele was required to "supervise" his cottage), Defendant has attempted to transform Mr. Keele's Group Leader position, from what amounts to being a glorified (and non-exempt) front-line Coach Counselor position, into a full-time "executive" for FLSA purposes. The problem with this argument is two-fold: 1. Mr. Keele was primarily "supervising" (usually by himself) groups of juveniles sheltered by Defendant, in the exact same fashion as the non-exempt Coach Counselors were expected to supervise; 2. Mr. Keele's <u>actual</u> experience as a Group Leader did not match up to the job description Defendant clearly crafted in an ill-fated attempt to evade FLSA overtime requirements. By giving nominal, meaningless, or inapplicable authority in the job



description, Defendant hopes to evade application of the FLSA to Mr. Keele as a Group Leader. Group Leaders should not be positionally exempt under the FLSA, and Mr. Keele in particular can provide sufficient evidence to defeat summary judgment on the executive exemption.

## II. Summary Judgment Standard.

It is axiomatic that summary judgment should be denied unless Defendant <u>truly</u> demonstrates the absence of a genuine issue of material fact regarding Plaintiff's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). And of course, a "genuine issue" of material fact will <u>only</u> be absent if, upon "viewing the evidence and inferences which may be drawn therefrom <u>in the light most favorable to the adverse party</u>," the movant is still clearly entitled to prevail as a matter of law. *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977) (emphasis added). Or as the Supreme Court recently restated it: "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. ___, 134 S. Ct. 1861, 1869 (2014)(citing *Brosseau v. Haugen*, 543 U. S. 194, 195, n. 2 (2004) (per curiam)).

When courts are asked to evaluate a purported executive exemption under the FLSA, courts must keep in mind that the FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. To that end, FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal quotation marks and citations omitted). It is the employer's burden to who that an exemption to the FLSA applied. *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam). In evaluating Mr. Keele's evidence, the Court should recognize that, if some of it appears "self-serving" (though it comes from his deposition in this case), the "self-serving" label is itself not a basis for the Court to disregard the evidence at the summary judgment stage. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. Cal. 2015) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2727 (3d ed. 2011) ("[F]acts asserted by the party opposing the [summary judgment] motion, if supported by affidavits or other evidentiary material, are regarded as true.")).



### III. The Executive Exemption Cannot Apply To Mr. Keele's Group Leader Position.

It was a "common joke" among the upper management (Unit Manager and "CS-3" a.k.a. shift supervisor) that Group Leaders were just [non-exempt] Coach Counselors who don't get a lunch or a break. ASOF ¶ 71. From the summary judgment evidence, it is obvious that it is Defendant who is seeking to "evade" the inevitable conclusion – Mr. Keele was hardly an exempt "executive" of any stripe. The gravamen of the executive exemption under the FLSA is the worker's "primary duty." Mr. Keele's primary duty was in no way "executive" in nature.

#### A. Department of Labor Regulations.

The Motion for Summary Judgment accurately states the DOL's four part conjunctive test for application of the executive exemption. MSJ at 3 (citing 29 C.F.R. § 541.100(a)). However, the only part that Defendant has unquestionably met on summary judgment is (1) salary basis. Plaintiff's summary judgment evidence has created a material factual dispute on the remaining three parts.

However, before turning to the analysis of parts (2) through (4), there is another regulation that deserves mention in light of the nature of Defendant's enterprise. Defendant essentially runs a juvenile home, housing young residents around the clock after they arrive from, *inter alia,* juvenile courts. CSOF ¶ 1. The nature of Defendant's work is so akin to what prisons do that its workers are trained even at the Coach Counselor level on the "Prison Rape Elimination Act." ASOF ¶ 74 & Ex. 6. Mr. Keele served on the team that dealt with "escapees" who went "AWOL." ASOF ¶ 75. These facts implicate application of 29 C.F.R. § 541.3 in determining whether the executive exemption can even apply in this context. That regulation states, in relevant part:

> (1) The section 13(a)(1) exemptions [including the "executive"] and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, **correctional officers, parole or probation officers…and similar employees**, regardless of rank or pay level, who perform work such as…**detaining or supervising suspected and convicted criminals, including those on probation or parole…or other similar work**.



(2) Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

29 C.F.R. § 541.3 (emphasis added).

In this case, Mr. Keele essentially functioned as a correctional officer or something very similar. His deposition (and the Group Leader job description) are replete with the focus on safety and making sure that the rules and regulations are upheld. *See* ASOF ¶ 73 & Ex. 5. His "supervisory authority" such as it was, was limited to making sure that the other individuals at or below his level were doing the same. ASOF ¶¶ 24-25 & Exs. 2 & 4. Thus, this Court need not even analyze the four-part executive exemption unless the Court decides that Mr. Keele's job function itself was outside the meaning of 29 C.F.R. § 541.3. As Mr. Keele essentially functioned much like a prison guard would be expected to function, including serving on the team that would find escapees, his job is similar enough to a prison guard or correctional officer to fall under 29 C.F.R. § 541.3 and thus not within the scope of the FLSA's executive exemption. The Court could grant summary judgment at this point without further analysis.

**B. Primary Duty Test.**

However, if the Court chooses to proceed to the four-part executive exemption test from the regulations, Defendant cannot meet its burden on any prong but the salary test. Despite Defendant's best efforts, Mr. Keele's Group Leader position does not meet the primary duty test – part (2) of the regulatory analysis. At the outset, it should be noted that job titles themselves are irrelevant to the question of the exemption. 29 C.F.R. § 541.2. Assuming the salary test is met, it is the <u>duties</u> of the position that control. *Id.* The "primary duty" regulation as a whole supports Mr. Keele's argument that his position was non-exempt. 29 C.F.R. § 541.700. The relevant question is, what is the "the principal, main, major or most important duty that the employee performs"? *Id.* at (a). In this case, as the summary judgment evidence makes clear, the most



important duty Mr. Keele performed as a Group Leader was ensuring the safety of the kids under his care. CSOF ¶¶ 7, 20. This was the same function he performed as a Coach Counselor. *Id*. & Exs. 2, 4 & 5. Section 541.700(b) goes on to suggest that percentage of time spent on exempt work may be considered – in this case, Mr. Keele spent 90-95% of his time performing non-exempt work: taking care of the kids. ASOF ¶ 44. While this percentage is not dispositive under the regulations, the last part of Section 541.700(c) indicates that "assistant managers" who are closely supervised and paid little more than those they "manage" are likely non-exempt. This well describes Mr. Keele's closely-supervised role and marginally-larger pay as a "Group Leader." CSOF ¶ 5, 27; ASOF ¶¶ 48-67.

Defendant cites *Baldwin v. Trailers Inns*, 266 F.3d 1104 (9th Cir. 2001) to bolster its claim that Mr. Keele is really an "executive." What Defendant misses from that case is the panel's statement that the Baldwins were exempt because "their principal value" was directing the actual day-to-day operations of the park they manage. *Id*. at 1115. The decision also notes that the Baldwins were basically free from interference and supervision, and ran the park with full discretion. *Id*. This could not be further from Mr. Keele's experience, where, despite his job description, he was essentially supervised all the time by Unit Managers and CS-3s, with no discretion of his own to wield. ASOF ¶¶ 55-66. It was the Unit Managers and CS-3s who would certainly qualify for the executive exemption, not Mr. Keele as a Group Leader. Mr. Keele's principal value to Defendant can be seen from his duties to ensure the well-being of the kids under his care. ASOF ¶ 42. This case is more akin to *Hickton v. Enter. Rent-A-Car Co.*, No. 2:09-mc-00210 (W.D. Pa., July 20, 2012), where the district court found that, even though a significant duty of the employee was managing <u>five</u> employees, the constant supervision by upper management, the similar nature of the work to those he managed, and the lack of a "meaningful" role in employment decisions were significant factual issues – and the exempt work he performed was in areas of low importance and low responsibility. *Id*. at 33-34 (analyzing 29. C.F.R. 700(a)). Mr. Keele did not "manage a store" like the cases cited by Defendant – he managed kids. When he became a Group Leader, the only real changes were 1) also being a conduit for messages from upper management to Coach Counselors in the same cottage; and 2) no more overtime. Unlike



the assistant manager in the *Phillips v. Tacala, LLC* case cited by Defendant, Mr. Keele's daily activities were under the complete control of the Unit Managers and CS-3s, and he had no discretion in the creation or performance of those daily activities.

Defendant offers a litany of overstated or outright stretched facts to attempt to expand Mr. Keele's role beyond its reality. *Compare* MSJ at 5-6 *with* CSOF. However, the cases cited are easily distinguishable as Mr. Keele's control over other employees was minimal at best. ASOF ¶¶ 48-67. It is one thing to say that Keele admitted that certain item were listed in his job description (as Defendant does); it is quite another to demonstrate that his actual day-to-day experience matched that job description (which it did not). *Id.* Mr. Keele controverted with admissible evidence most of the key facts Defendant alleged – certainly enough to create a fact issue on "primary duty."

For some reason, Defendant specially highlights the preeminence of Mr. Keele's "safety obligations" to follow state federal regulations while "supervising his cottage." MSJ at 8-9. Defendant fails to disclose that Mr. Keele's safety obligations vis-à-vis his cottage were identical in both in his job description as a Coach Counselor and as a Group Leader. ASOF ¶ 43, Exs. 2 & 4. This was no unique "management" task, it was a requirement for everyone because of the nature of Defendant's work. ASOF ¶ 73 & Ex. 5.

Defendant then attempts to suggest that Mr. Keele was responsible for training. MSJ at 10. However, Mr. Keele testified clearly that training was not actually within his direct purview – he simply received names of Coach Counselors who needed to go to training from Unit Managers and CS-3s and passed the information along. ASOF ¶ 61.

**C. Directed Two or More Test.**

Part (3) of the test is whether Mr. Keele directed the work of two or more employees. Defendant argues that Mr. Keele supervised "all" the Coach Counselors. MSJ at 13-14. This hearkens back to 29 C.F.R. 541.3 where certain non-exempt employees may have occasion to help guide other employees' conduct in furtherance of the larger mission. In reality, Mr. Keele testified bluntly that most of the time it was either just him by himself or with one other coach counselor, and that he got "no say" about that. CSOF ¶ 29; ASOF ¶¶ 48-49. This creates a material fact question on whether Defendant has met part (3) of the Section 541.700 test.



**D. Authority to Hire and Fire (or "Particular Weight").**

The last part of the Section 541.700 test is whether Mr. Keele had the authority to hire or fire other employees or whether his suggestions and recommendations about other employees were given "particular weight." In this case, Mr. Keele had neither authority nor particular weight. He was asked to interview four people to see if they were a good fit for the company. ASOF ¶ 68. However, he was not even told what position for which they were interviewed. *Id.* None of his recommendations regarding personnel were ever followed. CSOF ¶¶ 35-36, ASOF ¶¶ 67, 69. This was not limited to Mr. Keele, as shown by Mr. Keele's brother, also a Group Leader, making similar recommendations that were also ignored. CSOF ¶¶ 33-34. Even the Coach Counselor Mr. Keele reported for inappropriate touching of a student retained that position. ASOF ¶ 69. The cases cited by Defendant all uniformly state that for the exemption to apply, the employee needs to play a substantial role in making or recommending employment decisions. MSJ at 17. It is difficult to find any summary judgment evidence in this case that Mr. Keele played more than a nominal role, if that. The Defendant has not met its burden to show Mr. Keele as carrying the high degree of authority required to satisfy the "particular weight" prong of the test as a matter of law.

**IV. Conclusion**

The undersigned is frankly kicking himself for not filing his own Motion for Summary Judgment as to liability in this case given the overwhelming evidence that Mr. Keele's job so clearly involved non-exempt functions as his primary duty, he hardly ever "supervised" more than one employee, and his employment recommendations were essentially ignored – on the few occasions he even made them. Mr. Keele's primary job was to manage the kids that Defendant housed around the clock and ensure their safety – the same as all the other employees. Furthermore, given the prison-like conditions, it is likely that the executive exemption is not even available to Defendant in this case. However, if that exemption test is applied, Mr. Keele has provided sufficient summary judgment evidence to defeat three of the four prongs, and send this case to trial. Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment in its entirety and identify which issues will be necessary for trial versus those the Court decides as a matter of law after reviewing the evidence submitted by both parties.



Respectfully submitted on this 9th day of February, 2016,

                                  JOSHUA CARDEN LAW FIRM, P.C.

                                  By: <u>s/Joshua W. Carden</u>
                                  Joshua W. Carden
                                  *Attorneys for Plaintiff*
                                  *Stephanos Keele*

## CERTIFICATE OF SERVICE

I certify that on the 9th day of February, 2016, I electronically transmitted a PDF version of this document to the Office of the Clerk of the Court, using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

Steven G. Biddle
Cory Walker
LITTLER MENDELSON, PC
2425 E. Camelback Rd., Ste. 900
Phoenix, AZ 85016
*Attorneys for Defendant*

                                  <u>/s/Joshua W. Carden</u>

