**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephanos Keele, | No. CV-14-02135-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Rite of Passage Incorporated, | |
| Defendant. | |

Before the Court is Defendant Rite of Passage, Inc.'s ("ROP") Motion for Summary Judgment.  (Doc. 33.)  The motion is fully briefed, and the Court heard oral argument on April 22, 2016.  For the following reasons, ROP's motion is denied.

## BACKGROUND

ROP owns and operates Canyon State Academy ("CSA"), an alternative high school located in Arizona.  (Doc. 34, ¶ 1.)  The campus includes residential cottages for the students, which ROP staffs with Group Living Coach Counselors and Group Leaders.  (*Id.*)  Plaintiff Stephanos Keele worked for CSA as Group Leader from December 2011 to December 2012.  (*Id.*, ¶ 2.)  In September 2014, Keele filed this action against ROP for failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  (Doc. 1.)  ROP moves for summary judgment, arguing Keele was exempt from the FLSA's overtime requirements because he was a bona fide executive employee.  (Doc. 33.)

**LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**DISCUSSION**

Under the FLSA, employers ordinarily must pay their employees one and one-half times their regular rate for work exceeding forty hours per workweek. 29 U.S.C. § 207(a)(1). This overtime requirement does not apply, however, to persons "employed in a bona fide executive, administrative, or professional capacity"—so-called "white collar" employees. 29 U.S.C. § 213(a)(1).

**I. 29 C.F.R. § 541.3(b)(1)**

Preliminarily, Keele argues that the Court need not address the white collar exemptions because his role as a Group Leader falls within the purview of 29 C.F.R. § 541.3(b)(1). Section 541.3(b)(1) provides that the white-collar exemptions do not apply

- 2 -

to:

> police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

Keele argues that ROP's business is "so akin to what prisons do" that § 541.3(b)(1) applies.  (Doc. 37 at 3.)  He asserts that he "essentially functioned as a correctional officer" because CSA operates like a juvenile home and he was responsible for the residents' safety.  (*Id.* at 3-4.)  Assuming Keele's description of his job duties is accurate, a Group Leader is not sufficiently analogous to a police officer, first responder, or correctional officer.  Keele cites no authority, and this Court is aware of none, applying § 541.3(b)(1) merely because a person is responsible for the safety of others.  The Court finds this provision inapplicable to this case.

## II. Executive Exemption

The Department of Labor ("DOL") has promulgated a four-part test for determining whether a person is "employed in a bona fide executive capacity."  A bona fide executive employee is one who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  FLSA exemptions are narrowly construed against employers and "[a]n 'employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.'"  *Webster v. Pub. Sch. Emp. of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) (quoting *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)).

**A.  Salary Basis**

It is undisputed that Keele meets the minimum salary requirement; he earned a fixed annual salary of $36,000 ($692.30 per week), which was not subject to reduction based on the quality or quantity of his work.  (Doc. 34, ¶¶ 4-6.)

**B.  Primary Duty**

DOL regulations provide a non-exhaustive list of tasks that are considered managerial:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.  It is undisputed that Keele performed some managerial tasks.  For example, Keele interviewed several Coach Counselor candidates, was responsible for making a "paper trail" of employee misconduct, coordinated overnight schedules for Coach Counselors, and ensured the safety of his assigned cottage.  (Doc. 34, ¶¶ 8-9, 16, 20.)

However, Keele disputes whether the performance of these tasks was his primary duty.  DOL regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  Whether a function is an employee's primary duty is based on all facts in a particular case.  *Id.* Factors to consider include:

[T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

Keele testified that ninety to ninety-five percent of his time was spent on non-managerial duties, such taking care of the students.  (Doc. 38, ¶ 44.)  Although Keele spent most of his time on non-exempt activities, ROP argues that he was still an exempt executive employee because his supervisory duties were relatively more important than his non-exempt duties, he was relatively free from direct supervision, and he earned significantly more money than Coach Counselors who performed the same non-exempt work that he performed.  (Doc. 33 at 8-13.)  However, Keele testified that his role as a Group Leader was substantially similar to that of his prior role as a Coach Counselor.  (Doc. 38 at ¶ 1.)  For example, he testified that his primary duty as a Group Leader was ensuring the safety of the kids under his care, but that safety was his primary duty as a Coach Counselor as well.  (*Id.*, ¶¶ 7, 17.)  Keele indicated that his discretion as a Group Leader was limited and that he had little to no freedom from direct supervision.  (*Id.*, ¶¶ 1, 7, 14, 29, 52.)  He also stated that the Group Leader and Coach Counselor positions were so similar that Unit Managers and CS-3s commonly joked that Group Leaders merely were "Coach Counselors who didn't get a break."  (*Id.*, ¶ 71.)

Narrowly construing the executive exemption against ROP, viewing the facts in a light most favorable to Keele, and drawing all reasonable inferences in his favor, a reasonable jury could conclude that Keele's primary duty as a Group Leader was not "management of the enterprise."

### C.  Supervision of Other Employees

An employer asserting that an employee is an exempt executive must also establish that the employee "customarily and regularly directs the work of two or more other employees."  29 C.F.R. § 541.100(a)(3).  The phrase "customarily and regularly" refers to a frequency that is "greater than occasional but which, of course, may be less

than constant" and "includes work normally and recurrently performed every workweek." 29 C.F.R. § 541.701.

ROP contends that Keele routinely directed the work of several Coach Counselors. (Doc. 34, ¶ 28.)  However, Keele testified that most of the time he was either alone in his assigned cottage or there with only one other Coach Counselor.  (Doc. 38, ¶ 29.)  He asserts that Unit Managers and CS-3s performed most of the supervision, training, and staffing.  (*Id.*, ¶¶ 59-63.)  He stated that he never issued assignments to Coach Counselors.  (*Id.*, ¶ 72.)  Further, although he supervised the kids in his cottage, he contends that he did not routinely supervise more than two other employees.  (*Id.*, ¶¶ 7, 12, 29.)  Given this factual dispute, a reasonable jury could find that Keele did not customarily and regularly direct the work of two or more other employees.

**D.  Hiring and Firing Authority**

Finally, an employer asserting that an employee is an exempt executive must show that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion . . . are given particular weight."  29 C.F.R. § 541.100(a)(4).  Although Keele interviewed several Coach Counselor candidates and was responsible for making a "paper trail" of employee misconduct, he also testified that his hiring recommendations were never followed, and that he lacked authority to fire or meaningfully discipline employees.  (*Id.*, ¶¶ 8-10, 13, 67-70.)  On these facts, a reasonable jury could find that Keele lacked authority to hire or fire employees, and that his recommendations were not given particular weight

## CONCLUSION

For the foregoing reasons, the Court concludes that reasonable inferences may be drawn in favor of either party as to whether Keele, as a Group Leader, was a bona fide executive employee within the meaning of the relevant statutes and regulations. Accordingly,

//

//

**IT IS ORDERED** that ROP's Motion for Summary Judgment, (Doc. 33), is **DENIED**.

Dated this 6th day of May, 2016.

Douglas L. Rayes
United States District Judge