Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanos Keele,<br><br>                                      Plaintiff,<br><br>vs.<br><br>Rite of Passage, Inc.<br><br>                                      Defendant. | **CASE NO.  2:14-cv-02135-DLR**<br><br>**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW** |

**PROPOSED FINDINGS OF FACT**

1.      Rite of Passage ("ROP") owns and operates Canyon State Academy ("CSA"), an alternative high school located in Arizona. The campus includes residential cottages for the students, which ROP staffs with Coach Counselors and Group Leaders.

2.      Plaintiff Stephanos Keele worked for CSA as Group Leader from December 2011to December 2012.

3.      ROP is a national provider of programs and opportunities for troubled and at-risk youth from social service agencies, welfare agencies, and juvenile courts. For 30 years, ROP has developed and operated a continuum of least-restrictive residential and non-residential programs, including education services and community-based programs. Among other facilities, ROP owns, operates, and manages CSA.   CSA is a large, multi-building campus that includes an administration building, classrooms, athletic facilities, farming areas, dining commons, and residential cottages for the students.

4.      Cottages are staffed with Coach Counselors and Group Leaders.



5.      On December 14, 2011, Keele was promoted from Coach Counselor to the position of Group Leader, a position he held until December 5, 2012.

6.      The Complaint in this matter was filed on September 25, 2014.  Accordingly, under a two-year statute of limitations, the relevant period of time for this litigation would be from September 25, 2012 to December 5, 2012.  A three-year limitations period would encompass the entire period of Plaintiff's employment as a Group Leader.

7.      As a Group Leader, Keele received a salary of $36,000 a year ($692.30 a week). Plaintiff's regular schedule consisted of 48 hours, and Defendant intended his salary to cover all hours worked.

8.      However, as Plaintiff's schedule was for 48 hours, the salary objectively was intended to cover 48 hours worked.

9.      Thus, Plaintiff's regular rate of pay was $692.30 divided by 48; $14.42 per hour.

10.     There was no agreement or "clear mutual understanding" between the parties that Plaintiff's salary was fixed regardless of the number of hours he worked.

11.     The Plaintiff did not receive overtime at any point while working as a Group Leader.

12.     The Plaintiff had to use paid time off for any days he was absence to avoid having his salary reduced.

13.     During his time as a Group Leader, Keys regularly worked for Defendant for 8 additional hours per workweek, for which his salary compensated him only at his regular rate of pay instead of at one and one half times that rate.

14.     The total number of those hours for which his salary compensated him at his regular rate of pay number is _____.  Multiplied by $7.21 (one-half times his regular rate), the additional amount owed for those hours is a total of $_____.

15.     During his time as a Group Leader, Keys also regularly worked for Defendant for more than the scheduled 48 hours per workweek, for which his salary did not compensate him at all.  The total number of those hours is _____.  Multiplied by $21.63 (one and one-half times his regular rate), the additional amount owed for those hours is a total of $_____.



16.    Keele conducted interviews of a few candidates for the position of Coach Counselor while employed as a Group Leader.

17.    His recommendations regarding hiring and termination were not followed by Defendant.

18.    Plaintiff's primary duties did not include 1) the exercise of discretion and independent judgment with respect to matters of significance or 2) the performance of office or non-manual work related to the management or general business operations of the Defendant.

19.    Plaintiff's primary duties did not include 1) management of the Defendant's enterprise or of a customarily recognized department or subdivision thereof; 2) the customary and regular direction of the work of two or more other employees; or (3) the hiring and firing of other employees; nor did Defendant give particular weight to his suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.

20.    The vast majority of Plaintiff's time was spend on non-exempt work.

21.    Given the recent lawsuits Defendant has experienced regarding the FLSA and overtime pay, Defendant's failure to comply with the FLSA in this case was willful, in that Defendant knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

22.    The Defendant's misclassification of Plaintiff was not in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the Wage and Hour Division of the Department of Labor.

**PROPOSED CONCLUSIONS OF LAW**

1.    Pursuant to the parties' stipulation, Rite of Passage, Inc. is an employer generally subject to the FLSA.

2.    Also, pursuant to the parties' stipulation, Plaintiff Keele meets the minimum salary requirement for the executive and administrative overtime exemptions; he earned a fixed annual salary of $36,000 ($692.30 per week), which was not subject to reduction based on the quality or quantity of his work.

3.    The FLSA is a remedial statute designed to eliminate "labor conditions detrimental



3

1   to the maintenance of the minimum standard of living necessary for the health, efficiency, and
2   general well-being of workers." 29 U.S.C. § 202.

3        4.     The FLSA sets a maximum number of hours employees may work per week. *Id.* at
4   § 207.

5        5.     Unless an FLSA exemption applies, employees may be required to work more than
6   40 hours per week only if, for every hour worked over the maximum, the employer compensates
7   the employee at a rate "not less than one and one-half times the regular rate at which he is
8   employed." *Id.* at § 207(a)(1).

9        6.     The overtime pay requirements of the Act do not apply to salaried employees who
10  work in a "bona fide executive, administrative or professional capacity." *Id.* at § 213(a)(1).

11       7.     Pursuant to the FLSA, the Secretary of the Department of Labor ("DOL") has issued
12  regulations defining each exemption. See 29 C.F.R. §§ 541.200-541.215.

13       8.     In FLSA cases, a court must first determine the employee's primary duty, and then
14  determine whether that primary duty disqualifies the employee from FLSA's protections. *See*
15  *Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012)
16  (citing *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012)).

17       9.     The question of how an employee spends his or her workday is one of fact, while
18  the question of whether his or her activities exclude him or her from the overtime-pay requirement
19  is one of law. *See Christopher v. SmithKline Beecham Corp*., 635 F.3d 383, 391 (9th Cir. 2011)
20  (citations omitted).

21       10.     The employer has the burden of showing the exemption applies to its employee. *Id.*
22  FLSA exemptions are to be "narrowly construed against ... employers and are to be withheld
23  except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of*
24  *Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal quotation marks and citations omitted).

25       11.     29 C.F.R. § 541.700(b) allows for percentage of time spent on exempt work to be
26  considered - the last part of Section 541.700(c) indicates that "assistant managers" who are
27  closely supervised and paid little more than those they "manage" are likely non-exempt.

28



4

**Administrative Exemption**

12.　　In order for the administrative exemption to apply, Defendant must prove that: (1) Plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance; (2) Plaintiff's primary duty was the performance of office or non-manual work related to the management or general business operations of the employer or the employer's customers; and (3) Plaintiffs were compensated on a salary or fee basis at a rate of not less than $455 per week or $23,660 annually. See 29 C.F.R. § 541.200(a).

13.　　The applicable regulations defined "discretion and independent judgment" as "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The term "matters of significance" refers to the level of importance or consequence of the work performed. *Id.* In determining whether an employee exercises discretion and independent judgment, courts look to numerous factors, including:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short- term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

**Executive Exemption**

14.　　In order for the executive exemption to apply, Defendant must prove that: (1) Plaintiff was compensated on a salary basis at a rate of not less than $455 per week; (2) Plaintiff's primary duty was management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Plaintiff customarily and regularly



directed the work of two or more other employees; and (4) Plaintiffs had the authority to hire or fire other employees or his suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular weight. See 29 CFR § 541.100(a).

15.     29 C.F.R. § 541.105 provides:

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker.

16.     This Court has confirmed that an "occasional suggestion with regard to the change in status of a co-worker" (29 C.F.R. § 541.105), is not grounds for categorizing Plaintiff as executively exempt. *See Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Rock v. Sunbelt Cranes, Const. & Hauling, Inc.*, 678 F.Supp.2d 1264, 1269-70 (M.D. Fla. 2009) (denying summary judgment on application of executive exemption where employee made occasional suggestions regarding employee promotions and infrequently exercised his authority to hire and fire)).

**Calculating Damages**

17.     Plaintiff's "regular rate" within the meaning of 29 U.S.C. § 207(a)(1) is determined by dividing his weekly salary by the number of hours per week the salary was intended to compensate - this is a question of fact. *See Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Ransom v. M. Patel Enters., Inc.*, 825 F.Supp.2d 799, 809 (W.D. Tex. 2011)).

18.     The Ninth Circuit has not directly addressed the question of whether the FWW method may be used retroactively to compensate employees who have been misclassified as exempt. Other federal courts are divided on the issue. *Id.* (citing *In re Texas EZPawn Fair Labor Standards Act Litigation*, 633 F.Supp.2d 395, 401 n.4 (W.D. Tex. 2008) (collecting cases)).

19.     Several Circuit courts have applied the Fluctuating Work Week (FWW) method in misclassification cases. *See, e.g., Valerio v. Putnam Associates Inc.* 173 F.3d 35, 39 (1st Cir. 1999); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); and *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008).

20.     However, as this Court has previously concluded, the FWW method should not be applied in a misclassification case in light of the FLSA's remedial purpose. *See Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012).

21.     Ordinarily, the FLSA mandates that overtime be compensated at 150% of the "regular" hourly rate. See 29 U.S.C. § 207.

22.     Four years after the FLSA was adopted, the United States Supreme Court decided *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) ("*Missel*"). *Missel* held that an employer and employee could legally agree, in certain circumstances, to a compensation arrangement where the employee would be paid a flat weekly rate for fluctuating hours without violating the FLSA, provided that the agreement contained a provision for overtime pay and the wage was sufficient to satisfy minimum wage requirements and offer a premium of at least "fifty per cent for the hours actually worked over the statutory maximum." *Id.* at 581.

23.     In 1968, the Department of Labor (DOL) promulgated 29 C.F.R. § 778.114, an interpretive rule intended to codify the Supreme Court's decision in *Missel*. *See Russell v. Wells Fargo and Co.*, 672 F.Supp.2d 1008, 1011 (N.D. Cal. 2009). That section provides, in pertinent part:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives



extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

24.     Thus, The employer must satisfy five conditions in order to take advantage of the FWW calculation: (1) the employee's hours must fluctuate from week to week, (2) the employee must receive a fixed salary, (3) the salary must meet the minimum wage standards, (4) the employee and the employer must have a clear mutual understanding that the salary (not including overtime premiums) is fixed regardless of the number of hours the employee works, and (5) the employee must receive overtime compensation for hours worked in excess of forty hours, not less than one-half the rate of pay. *See Blotzer v. L-3 Communications Corp.*, Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Brown v. Nipper Auto Parts and Supplies, Inc.*, 2009 WL 1437836, *6 (W.D. Va. 2009) and 29 C.F.R. § 778.114(a)).

25.     The FWW method set forth in 29 C.F.R. § 778.114 is not intended to apply retroactively in a misclassification case. *See Urnikis-Negro*, 616 F.3d at 666 (stating that 29 C.F.R. § 778.114 is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer has breached its statutory obligations). It was drafted by the Department of Labor as "forward-looking" and only describes how employers and employees should structure an agreement for future compensation. *Id.*at 677. Moreover, because the regulation was adopted without formal rule-making, it is entitled to less deference. *See Blotzer v. L-3 Communications Corp.*, Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Hasan v. GPM Investments, LLC*, 2012 WL 3725693, *2 (D.Conn. 2012) and others).

26.     The FWW should not be applied in the present case because: (1) it is contrary to the rationale of the FLSA to apply the FWW method in misclassification cases; (2) application of the FWW in misclassification cases runs counter to the intent of the FLSA; and (3) even if the FWW method were applied, Defendant has failed to prove the elements of the FWW method are present in this case.

27.     Application of the FWW method in a misclassification case is contrary to FLSA's rationale. The FWW method requires proof of a "clear mutual understanding" that: (1) the fixed salary is compensation for the hours worked each work week, whatever their number; and (2) overtime pay will be provided contemporaneously such that it fluctuates depending on hours

worked per week. *See* 29 C.F.R. §§ 778.114(a) & (c). In a misclassification case, at least one of the parties initiated employment with the belief that the employee was exempt from the FLSA, paid on a salary basis, and therefore not entitled to overtime. When an employee is erroneously classified as exempt and illegally being deprived of overtime pay, neither the fourth nor fifth legal prerequisites for use of the FWW method is satisfied. The parties do not have a "clear, mutual understanding" that a fixed salary will be paid for "fluctuating hours, apart from overtime premiums" because the parties have not contemplated overtime pay.

28.    The parties cannot mutually agree that the employee will be paid a flat weekly rate for fluctuating hours, including those hours worked in excess of forty, without overtime pay. Such an agreement would be illegal: employees cannot agree to waive their right to overtime pay. *See Russell v. Wells Fargo and Co.*, 672 F.Supp.2d 1008 (N.D. Cal. 2009). In addition, because the employee was erroneously classified as exempt, overtime compensation was not provided contemporaneously. *See Russell v. Wells Fargo and Co.*, 672 F.Supp.2d 1008 (N.D. Cal. 2009); *Hasan*, 2012 WL 3725693 at * 4 (collecting cases which hold that, in a misclassification case, the parties never agreed to an essential term of a fluctuating work week arrangement, ie. that overtime would be paid at different rates depending on the number of hours worked per week).

29.    As the court stated in *Ransom v. M. Patel Enters., Inc.*, 825 F.Supp.2d 799, 810 n.11 (W.D. Tex. 2011):

> The significance of the employee's lack of knowledge of nonexempt status cannot be overstated. The fundamental assumption underpinning the FWW is that it is fair to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation. The job will have been advertised as a salaried position. The employee, if he raised the issue, will have been told that the salary is all he will receive, regardless of how many hours he works. That is the very nature of a salaried, exempt position. When it turns out that the employer is wrong, and it is learned that the FLSA required the employer to pay the employee an overtime premium, the notion that the employee's conduct before he knew this is evidence that the employee somehow consented to a calculation method for the overtime pay that no one even knew was due, is perverse. If the FWW requires consent in some fashion, the employee's actions before he knew he was due overtime pay just cannot logically be the basis of that consent.

9

30.     Furthermore, 29 C.F.R. § 778.114(c) provides that the FWW method cannot be used "where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for non-overtime hours."

31.     In a misclassification case, because employees have not been paid overtime premiums, they are compensated for those hours worked more than forty at a rate not greater than the regular rate. *Russell*, 672 F.Supp.2d at 1014. Thus, attempting to retroactively apply the FWW method to a miscalculation case is akin to "the old 'square peg in a round hole' problem [because it requires] apply[ing] § 778.114 to a situation it was not intended to address." EZPawn, 633 F.Supp.2d at 402. "In making its decision here, the Court is 'mindful of the directive that the [FLSA] is to be liberally construed to apply to the furthest reaches consistent with Congressional direction.'" *Russell*, 672 F.Supp.2d at 1014 (citing *Klem*, 208 F.3d at 1089).

32.     Application of the FWW in a misclassification case gives rise to a "perverse incentive" for employers, because the employee's hourly "regular rate" decreases with each additional hour worked. In fact, the difference between the FWW method and the traditional time-anda-half method can result in an employee being paid seventy-one percent less for overtime over a given year, and under the FWW method, the effective overtime hourly rate of an employee working sixty-one hours or more is less than the non-overtime hourly rate of an employee who worked no more than forty hours per week. *See Russell*, 672 F.Supp.2d at 1012; *see also Hasan*, 2012 WL 3725693 at *2 (calculating the pay difference for a misclassified employer under both methods). This result is contrary to the FLSA's purpose: encouraging employers to spread employment among more workers, rather than employing fewer workers who are then required to work longer hours. *See Robertson v. Alaska Juneau Gold Min. Co.*, 157 F.2d 876, 879 (9th Cir. 1946).

33.     Finally, even if the Court concluded that the FWW method does apply in some miscalculation cases, it would not apply in the present case because Defendant has failed to demonstrate a "fluctuating" work week or a "clear mutual understanding" of straight pay and a contemporaneous overtime arrangement as required by the regulation. The FWW was intended to apply to "fluctuating" work schedules, ie. schedules in which an employee endures long hours some weeks but enjoys the benefit of short hours in other weeks, all at the same rate of pay. *See*

*Hasan*, 2012 WL 3725693 at *4.

34.     In the present case, it is undisputed that Plaintiffs consistently worked more than 40 hours per week. Thus, Plaintiff's "variance, between weeks with a moderate amount of overtime hours, and weeks where a majority of hours worked exceeded the 40 hour threshold, is not the same as the up and down fluctuation contemplated by the DOL and by the Court in *Missel*." *Id.*

35.     In addition, by its plain terms, the FWW method applies only when the employee clearly understands that he will receive straight-time pay for all hours worked and extra compensation of at least half his regular rate of pay, in addition to the fixed salary, for overtime hours during the weeks when he works overtime. *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 59 (D.D.C. 2006); *Russell*, 672 F.Supp.2d at 1013-14.

36.     Furthermore, even if Defendant could prove that Plaintiff and Defendant had a clear, mutual understanding that Plaintiff would work 48 hours a week without overtime pay, such an arrangement amounts to an agreement "not to receive their FLSA entitlement to overtime pay. This would be illegal. Employees cannot agree to waive their right to overtime pay." *Russell*, 672 F.Supp.2d at 1014.

37.     In sum, "If Defendants′ position were adopted, an employer, after being held liable for FLSA violations, would be able unilaterally to choose to pay employees their unpaid overtime premium under the more employer-friendly of the two calculation methods. Given the remedial purpose of the FLSA, it would be incongruous to allow employees, who have been illegally deprived of overtime pay, to be shortchanged further by an employer who opts for the discount accommodation intended for a different situation." *Russell*, 672 F.Supp.2d at 1014. Accordingly, the Court concludes that the FWW method to damages calculation is not applicable in the instant case.

**Liquidated Damages**

38.     Section 216 of the FLSA mandates that an employer who fails to pay overtime as required by the FLSA is liable to the employee in the amount of their unpaid overtime compensation and an additional equal amount as liquidated damages. "Double damages are the norm, single damages the exception...." *Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-



00274-JGZ (D. Ariz., December 6, 2012) (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)).

39.   Additionally, liquidated damages are automatic upon a fact-finding of "willfulness." *Chao v. A-One Med. Servs. Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)

40.   Thus, liquidated damages are mandatory unless the employer can prove compliance with Section 11 of the Portal-to-Portal Act, which states:

> If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

41.   Section 11 requires proof that the employer acted both in subjective good faith and with objectively reasonable grounds to believe that it was not in violation of the FLSA. *See E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985).

42.   An employer's burden of proof with respect to Section 11 is "plain and substantial," *Marshall v. Brunner*, 668 F.2d 748, 752 (3rd Cir. 1982), and "a difficult one to meet." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987). In order to meet the subjective test, the employer must come forward with evidence of its actual reliance on a person or entity with knowledge of the FLSA regulations, including its attorney or the Department of Labor. See *Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Elwell v. University Hospitals Home Care Services*, 276 F.3d 832, 840-41 (6th Cir. 2002); and *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3rd Cir. 1991) (to carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act′s requirements, but nonetheless, violated its provisions)).

43.   The Court must then consider whether that reliance was objectively reasonable. An employer may not rely on ignorance alone in meeting the objective test. *See Barcellona v. Tiffany English Pub*, 597 F.2d 464, 468-69 (5th Cir. 1979).

44.   In addition, in lieu of any affirmative attempt by an employer to determine the



legality of its wage payment practices, the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation. *Martin*, 940 F.2d at 910. Finally, even where an exemption appears legally uncertain, the misclassification cannot be deemed objectively reasonable unless it "pervade[s] and markedly influence[s] the employer's belief." *Id.*

45.     A similar defense exists under Section 10 of the Portal-to-Portal Act. Section 10 provides that an employer is not liable for violation of the FLSA if "he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259.

46.     Like Section 11, Section 10 of the Portal-to-Portal Act places a high burden of proof on the employer. The employer must prove actual reliance on a specific administrative ruling or interpretation. See 29 C.F.R. § 790.16(a). The administrative interpretation relied upon must provide a clear answer to the particular situation in order for the employer to rely on it. *Blotzer v. L-3 Communications Corp.,* Case No. 4:11-cv-00274-JGZ (D. Ariz., December 6, 2012) (citing *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923 (11th Cir. 1987)). Finally, the employer must demonstrate that his good faith reliance was objectively reasonable. *See Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991).

**Statute of Limitations**

47.     29 U.S.C. § 255(a) provides a three-year statute of limitations for willful violations of the FLSA , instead of the normal two years.

48.     A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *SEIU, Local 02 v. County of San Diego*, 60 F.3d 1346, 1356 (9th Cir.1994) (quoting Richland Shoe).

49.     Prior FLSA violations can be sufficient to prove willfulness, or at least "reckless disregard." *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir., 2003)

50.     Willfulness exists where an employer disregards the very "possibility" that it was



violating the FLSA. *Id.* (citing *Alvarez v. IBP, Inc.*, 339 F.3d 894, 2003 WL 21788995 (9th Cir. Aug. 5, 2003).

**Conclusion**

51.     The Court holds that Defendant has failed to demonstrate the applicability of any exemption to the FLSA, and either Section 10 or 11 of the Portal to Portal Act.

52.     The Court holds that, based on the finding of Defendant's willfulness, the three-year statute of limitations is correctly applied to this case. 29 U.S.C. § 255(a).

53.     The Court holds that Plaintiff is entitled to liquidated damages in the amount of $_____.

Respectfully submitted this 20th day of June, 2016,

JOSHUA CARDEN LAW FIRM, P.C.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff*
*Stephanos Keele*



1

**CERTIFICATE OF SERVICE**

2

I certify that on the 20th day of June, 2016 I electronically transmitted a PDF version of

3

this document to the Office of the Clerk of the Court, using the CM/ECF System for filing and

4

transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

5

Steven G. Biddle

6

Cory Walker

7

Littler Mendelson, PC

2425 E. Camelback Rd., Ste. 900

8

Phoenix, AZ 85016

*Attorneys for Defendant*

9

10

/s/Joshua W. Carden

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

